## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), Plaintiff Sonoma County Association of Retired Employees (SCARE) moves this Court for an order compelling non-party Mercer, Inc. ("Mercer") to produce materials in compliance with a subpoena issued in an action pending in the United States District Court for the Northern District of California, *SCARE v. Sonoma County*, No. 09-4432 CW (N.D. Cal.). Despite having previously agreed to produce responsive documents and in fact producing some responsive documents, Mercer has reneged and is now refusing to produce any additional documents, contravening its obligation to do so under Federal Rule of Civil Procedure 45.

### II.     BACKGROUND

**A.     Factual Background**

SCARE, a nonprofit membership organization of retired public employees, brought the underlying action against Sonoma County, California (the "County") in the Northern District of California in September 2009. *Sonoma County Ass'n of Retired Employees v. Sonoma County*, 2015 WL 1870841, at *1 (N.D. Cal. Apr. 23, 2015). SCARE's principal allegations are set forth in its pending motion for partial summary judgment. *See Sonoma County Ass'n of Retired Employees v. Sonoma County*, No. 09-4432 CW (N.D. Cal. May 28, 2015), ECF No. 166. To summarize, SCARE contends that the County promised its employees as far back as 1964 that it would provide them with the same contributions to medical benefits as retirees that it provided to active employees. *See id.* From 1989 on, this promise was enshrined in collective bargaining agreements, known as Memoranda of Understanding (MOUs), with the County's various employee unions. *See id.* However, in 2008, concerned with the perceived cost of funding retiree medical benefits as a result of new accounting standards, the County took steps to drastically cut back its contribution to retiree medical benefits. *See id.* In particular, as a way of trying to get around the "tie" to active employees, the County cut its contributions to both retirees' and active

2

employees' medical benefits from 85% of the premium for the lowest cost plan offered by the County to a flat $500, while simultaneously giving active employees $600 in cash, nominally to use as they saw fit but in actuality designed to evade the County's obligations. *See id.*

Mercer was a consulting firm that provided actuarial services for the County Health Plan, a self-insured health plan offered by the County to its employees and retirees. Mercer also negotiated on the County's behalf with outside insurers regarding renewals for other health plans offered by the County and helped prepare open enrollment materials for County employees and retirees, among other tasks. *See* Decl. of D. Ranahan ("Ranahan Decl.")[1] Ex. 1 (Braun Dep. 42:11-43:9); Ex. 2 (Wertz Dep. 41:21-42:5, 42:15-21, 43:3-14, 44:20-46:6, 48:6-49:10, 51:5-52:9, 55:7-23, 64:21-66:10, 121:20-22, 122:6-123:3); Ex. 3 (Gearhart Dep. 194:2-12, 197:7-198:7, 206:24-207:10); Ex. 4 (Myers Dep. 83:21-84:15). These tasks directly addressed the retiree medical benefits offered by the County. For example, on March 12, 1992, Mercer counseled the County regarding changes to the County Health Plan, suggesting that "because of the litigious nature of retiree medical benefits, there should be a further disclaimer whereby the County of Sonoma reserves the right to amend or terminate the Plan at any time *either before or after* a person has retired." Ex. 5 (Braun Dep. Ex. 61). Based on the dates of documents produced in the course of this litigation, Mercer appears to have worked with the County from at least 1992 to at least 2002. *See, e.g., id.*; Ex. 6 (SONOMA-H-053768).

**B.     Procedural History of Subpoena**

On July 10, 2014, Plaintiff served a subpoena directing Mercer to produce documents generally relating to the provision and/or cost of health benefits for County retirees, including Mercer's role with respect to County retiree medical benefits. *See* Ex. 7 (Subpoena) at Ex. A 10-11; Ex. 8 (Proof of Service). On July 23, counsel for Marsh & McLennan Companies, Inc. ("MMC"), Mercer's ultimate parent company, objected to the subpoena, but indicated that

---

[1] All citations to exhibits are to the exhibits attached to the Declaration of Darin Ranahan filed herewith unless otherwise noted.

Mercer was willing to discuss "a mutually agreeable approach to producing responsive information." *See* Ex. 9 ¶ 6. Subsequently, Mercer and Plaintiff agreed that Ruth Causey, the Mercer employee most familiar with its Sonoma County files, would narrow down files for inspection, at which point counsel for MMC would review the documents and produce all non-privileged documents. *See* Ex. 10 (Nov. 4, 2014 and Nov. 19, 2014 emails). Mercer proposed to stop review in the event that there were "no documents related to retiree medical coverage" in the first 12 boxes, but counsel for Plaintiff explicitly stated that Plaintiff was "not amenable to ceasing review after 12 [of the 33 total] boxes." *See id.* As an alternative, counsel for Plaintiff offered to review the remaining 21 boxes in such an event. *See id.* (Nov. 19, 2014 email). A month later, counsel for MMC replied that Mercer policy prevented counsel from making these documents available for SCARE's inspection, but suggested that they would be proceeding to review all 33 boxes once SCARE provided exemplar responsive documents, which it did two weeks later. *See id.* (Dec. 16, 2014 and Dec. 30, 2014 emails).

Mercer made an "initial" production on February 19, 2015, and indicated that it would be producing documents "on a rolling basis" per Mercer and Plaintiff's earlier agreement, with the next production to be made "shortly." *See id.* (Feb. 18, 2015 email); Ex. 11. This initial production included various highly relevant documents related to the retiree medical benefits offered by the County, including such documents as the County Health Plan's governing documents that discuss retiree eligibility, open enrollment materials discussing retiree medical coverage, and analyses of the retiree medical benefits provided by the County. Ranahan Decl. ¶ 12. After the initial production, however, counsel for MMC did not produce any additional documents, nor did it respond to counsel for Plaintiff for two months. *See* Ex. 10 (Feb. 24, Mar. 23, and Apr. 23 emails). On April 27, counsel for MMC changed tack, taking the new position that "after Mercer's initial production, we [agreed] to have a discussion as to whether Mercer had to continue to review all thirty-something boxes," and in any case, "[t]he materials [Mercer] produced did not seem particularly relevant . . . ." *Id.* (Apr. 27 email). Counsel for Plaintiff

replied the following day, rejecting counsel for MMC's new iteration of the parties' agreement, including an explanation of the relevance of the documents in Mercer's possession, but has not received a response. *See id.* (Apr. 28 email); Ranahan Decl. ¶ 11.

### III.     ARGUMENT

**A.     Legal Standard.**

If a non-party fails to produce documents in compliance with a subpoena, the serving party "[a]t any time, on notice to the commanded person" may "move the court for the district where compliance is required for an order compelling" the non-party to produce documents. Fed. R. Civ. P. 45(d)(2)(B)(i). A subpoena directed to a non-party need only satisfy Federal Rule of Civil Procedure 26's broad definition of "relevance." *See Schoolcraft v. City of New York*, No. 10 Civ. 6004 (RWS), 2012 WL 2161596, at *11 (S.D.N.Y. June 13, 2012). For purposes of discovery, "relevance" includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

**B.     The Subpoena Seeks Production of Documents Within the Scope of Discovery.**

Here, the subpoena seeks the production of documents relating to (1) the provision and/or cost of health benefits for County retirees; (2) communications between Mercer and the County relating to retiree health benefits; (3) contracts or professional services agreements between Mercer and the County; and (4) documents created or maintained by certain individuals relating to health benefits for County employees and/or retirees from 1992 to 2002.[2] *See* Ex. 7 (Subpoena) Ex. A 10-11. Documents on these topics bear directly on SCARE's claims about the County's agreement to provide its retirees with health benefits. Indeed, Mercer produced 177

---

[2] While the subpoena itself calls for production of documents from 1945 to the present, SCARE agreed to narrow the temporal scope of its subpoena to 1992 to 2002.

pages of documents related to retiree medical coverage in its "initial production." *See* Ex. 11; Ex. 10 (Apr. 28, 2015 email). The subpoena thus properly seeks the production of documents within the permissible scope of discovery.

**C.     The Subpoena Does Not Impose Undue Burden on Mercer and, in Any Event, SCARE Has Offered to Take Steps to Reduce That Burden.**

In the course of meeting and conferring, Mercer identified 33 boxes of potentially responsive documents. Mercer previously indicated it had no problem with reviewing 12 such boxes, and even indicated that it would continue its search if it found documents about retiree medical benefits in those 12 boxes. SCARE offered to review the remainder in the event that Mercer elected not to proceed thereafter. However, Mercer's initial production of documents *did* include documents about retiree medical benefits. Thus, requiring it to go through the remaining documents in its possession, custody, or control to produce documents would be in line with its earlier offer, which it did not then contend imposed any undue burden.

In any event, in an attempt to reduce the burden on Mercer of responding to its subpoena, SCARE renews its offer to inspect the remaining boxes that Mercer has not reviewed for responsive documents, so long as Mercer makes them available. There is no reason why Mercer cannot do so.

IV.    **CONCLUSION**

For the foregoing reasons, SCARE respectfully requests that this Court enter an order compelling Mercer to produce all documents in its possession, custody, or control that are responsive to the subpoena.

Dated: June 30, 2015                                Respectfully submitted,

                                          By: _____
                                               Bill Lann Lee
                                               LEWIS, FEINBERG,
                                               LEE & JACKSON, P.C.
                                               476 9th Street
                                               Oakland, CA 94607-4048

                                               *Attorneys for Plaintiff*